**NEW ENGLAND MOTOR RATE BU-REAU, INC. et al., Plaintiffs,**

v.

**The UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 65–307–C.**

United States District Court
D. Massachusetts.

May 31, 1966.

W. Arthur Garrity, Jr., U. S. Atty., John Paul Sullivan, Asst. U. S. Atty., Boston, Mass., Attys. for deft., United States of America.

Robert W. Ginnane, Gen., Counsel, Leonard S. Goodman, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

Bryce Rea, Jr., Burton Fuller, Washington, D. C., for New England Motor Rate Bureau, Inc., National Motor Freight Traffic Association, Middle Atlantic Conference, Ohio Motor Freight Tariff Committee, Inc., and Pacific Inland Tariff Bureau, Inc.

Peter T. Beardsley, Richard R. Sigmon, Washington, D. C., for American Trucking Associations, Inc.

Roland Rice, John S. Fessenden, Washington, D. C., for Regular Common Carrier Conference.

John S. Fessenden, Washington, D. C., for Southwestern Motor Freight Bureau, Inc.

Homer S. Carpenter, Washington, D. C., for Eastern Central Motor Carriers Association, Inc.

LeGrand A. Carlston, Z. L. Pearson, Jr., Denver, Colo., for Rocky Mountain Motor Tariff Bureau, Inc.

J. D. Lawson, George D. Michalson, Kansas City, Mo., for Middlewest Motor Freight Bureau.

Guy H. Postell, Frank D. Hall, Atlanta, Ga., for Central and Southern Motor Freight Tariff Association, Inc., and Southern Motor Carriers Rate Conference.

John W. McFadden, Chicago, Ill., for Central States Motor Freight Bureau, Inc.

Kenneth B. Williams, Boston, Mass., of counsel.

Robert G. Bleakney, Jr., Sullivan & Worcester, Boston, Mass., William Q. Keenan and J. D. Harris, New York City, of counsel, for Railway Express Agency and Drug and Toilet Preparation Traffic Conference, The National Small Shipments Traffic Conference, Inc., and Eastern Industrial Traffic League, Inc.

Charles Ewing, Boston, Mass., for Acme Fast Freight, Inc., International Forwarding Co., Lone Star Package Car Co., Merchants Shippers, National Carloading Corp., Pacific and Atlantic Shippers, Inc., Republic Carloading & Distrib-

uting Co., Inc., Springmeier Shipping Co., Inc., Star System, Inc., Texas Freight Co., Inc., Universal Carloading & Distributing Co., Inc., Western Carloading Co., Inc., Westland Forwarding Co., and Yellow Forwarding Co.

## OPINION

Before ALDRICH, Circuit Judge, and GIGNOUX and CAFFREY, District Judges.

ALDRICH, Circuit Judge.

■ This is an action to set aside an order of the Interstate Commerce Commission approving a rate schedule filed by Railway Express Agency, REA, for container traffic, so-called, between thirty-five stated cities in the United States. The rate was approved by the full Commission. Freight, All Kinds, L.C.L. Container Charges,—U.S.A., 1964, 323 I.C. C. 468.[1] The plaintiffs, original and by by way of intervention, are representatives of motor freight carriers and freight forwarders, and are proper parties to prosecute this proceeding. Their fundamental objection is that container service is not true express service, and therefore impermissible for REA as an express carrier.

Container service is elaborately described in the Commission's opinion, but, briefly, involves a special low rate for transporting a container of a fixed capacity (101 cubic feet) which the shipper may load with any number of articles so long as the total weight does not exceed 3,000 pounds. The charge is on the basis of a 2,500 pound minimum, and does not depend on the nature of the lading. No special protection from heat or cold, or against theft, is provided, and a few enumerated types of articles, consequently, are not taken. REA furnishes the container, but makes a charge for excessive retention thereof. There is an additional charge, if the lading is to be distributed at destination for separate local delivery.

Although the container rate was found to be fully compensatory, the resulting economies enable REA to charge considerably less in some instances than motor freight carriers for essentially competing service. This is the rub.

■■ We consider preliminarily the two points with which REA commences its brief. The President's Transportation Message to Congress of April 4, 1963, urging diminished regulation, experimentation, and "new kinds and combinations of service," cannot enlarge the statutory authority granted REA, or any other carrier. Nor can the meaning of that authority depend upon REA's financial circumstances. If REA is unable to survive on express business alone, this fact cannot create rights which it would not otherwise have. The Commission did speak of REA's financial need. We do not believe, however, that either of these factors was a basis for its decision that the container service was express service.

Plaintiffs argue that the Commission has rejected the "classic" definition of "express service" [2] and substituted five criteria first set forth in the second *Ar-*

1. One commissioner filed a separate concurring opinion, and two did not participate.

2. Plaintiffs give as one example of a definition "in classic terms" the one set out in Transportation Activities of Arrowhead Freight Lines, Ltd., 1952, 61 M.C.C. 131, 140. "Essentially express service is a method of transportation by which shipments receive greater care, security, and faster transportation than are accorded ordinary freight either by the same carrier or by other like carriers generally. Express service also involves the idea of regularity as to route, or time, or both. Retzer v. Wood, 109 U.S. 185, [3 S.Ct. 164,] 27 L.Ed. 900. It is a premium service utilized mainly when conditions, generally at point of delivery, make its use by the shipper economically feasible despite relatively higher transportation costs. Because express service is marked by an undertaking to provide transportation services superior to that normally required and furnished for ordinary freight, it is both appropriate and proper that relative [sic] higher charges should be established for it."

*rowhead* decision, Transportation Activities of Arrowhead Freight Lines, Ltd., 1955, 63 M.C.C. 573, 581–82.[3] These criteria appear to have been intended not as a change in the definition of express service, but as a refinement of the more general definition, making it clearer and more precise. With the difference that the five factors do not include premium charges, a matter to be discussed below, they depart from the former definition in no significant aspect. Plaintiffs seem to suggest that since we "approved" a particular version of the traditional definition in Auclair Transportation, Inc. v. United States, D.Mass., 1963, 221 F.Supp. 328, aff'd *per curiam*, 376 U.S. 514, 84 S.Ct. 966, 11 L.Ed.2d 968 the Commission was thereafter bound by it. In *Auclair* we were not asked to choose between one definition and another. We quoted the definition set out by the Commission in the report under review, but the case did not involve any inquiry into its details. We see no reason why the Commission should be bound by the exact words it once used.

Plaintiffs contend that even under the five criteria, the container tariff is inconsistent with REA's authority as an express carrier. This calls for a brief analysis. Criteria (1) and (2), fn. 3, supra, are closely related. (1) is that an express agency must "transport any commodity which may be safely transported in ordinary van-type equipment." Although, as previously mentioned, REA excepts certain items from its container service tariff, it holds itself out to transport the excepted items under its other tariffs. (2) is that it must provide such care and security as the commodity may require. Contrary to plaintiff's intimations that commodities not demanding special treatment are within the exclusive domain of freight carriers, REA would certainly fail in its obligations if it refused to carry goods because they were not valuable or did not require special care.

Criterion (3) is that all shipments be handled with equal expedition from point of pickup to point of delivery. Plaintiffs do not contend that, once the container is in REA's hands, it is transported less expeditiously than other express shipments. Plaintiffs do argue, however, that REA fails to meet this criterion because the shipper has 48 hours free use of the container before and after shipment. We cannot agree. Obviously it takes little time to load the container. The shipper's independent decision when to initiate the shipment cannot be imputed to the carrier if, as is the case, the carrier is willing and able to pick up, transport, and deliver the lading expeditiously on being called upon to do so. Any shipper of a single article, or of many articles in his own container, has an equal option.

As for criterion (4), plaintiffs do not contend that REA's transportation of the containers does not follow firmly fixed schedules, with fixed delivery times. And, although the meaning of criterion (5)'s "relatively simple billing [and] rate structures" is not entirely clear, there is

---

3. "Succinctly stated the rendition of a bona-fide express service by property carriers with authority to transport general commodities requires such carriers (1) to provide a bona fide holding out together with the ability to transport any commodity which may be safely transported in ordinary van-type equipment, including those requiring a maximum degree of care or security or both, (2) to provide such care or security or both as the inherent characteristics of the commodities making up the shipments which are accepted may require, (3) to provide equally expeditious transportation and careful handling for all accepted shipments, regardless of their volume, special demands, or value, from the point of pickup to the point of delivery, (4) to perform actual operations between all authorized points upon firmly established schedules allowing minimum practicable highway transit time and providing fixed delivery times which are available to actual and potential shippers at authorized origins and which in practice are not changed except after substantial notice to the general public, and, (5) to use relatively simple billing, rate structures, and rate publications whereby the rates and charges for the services offered and performed may easily be determined with a minimum of delay."

no suggestion that REA's rate structure is not simple, even with this added tariff.

What plaintiffs' case really boils down to is that they would add a sixth factor. They point to the fact that the Commission and this court, Auclair Transportation, Inc. v. United States, supra, have stated that express service "usually" involves "premium rates." Rates, however, are only a result of the costs involved in transporting the commodities. If a premium charge is a frequent manifestation of express service, it is not an inevitable one. When shipments are given special care or security, the transportation costs to the carrier are greater, and, correspondingly, the rates charged to the shipper may be higher. So long as the rates are compensatory we could not give determinative weight to their relatively low amount. Nor, within the limits that the rate structure remain simple, can we find any inconsistency in an express carrier charging rates that to some degree correspond to the special handling, *vel non,* given the shipment. Nothing in the historical definition of an express carrier obliges it to charge a single rate.

REA's container service may not represent the highest calibre of express service. The question, however, is one of degree, and one as to which we give considerable weight to the expertise of the Commission. Concededly, a service might be so far diminished as to cease to be an express service entirely. The Commission gives, as an example, service that is delayed in delivery. We agree that this would be a fundamental departure. But we also accept the Commission's analysis and conclusion that REA's container traffic did not fall beyond the bounds.

It may well be, as plaintiffs suggest, that freight service has improved to such an extent that the distinction between express and freight carriers is considerably less marked than it once was. However, the distinction is not without meaning. We agree with the Commission that it is not for the freight carriers' progress to determine the permissible bounds of express service by some process of elimination, or by a charge that express carriers' rates in some instances are highly competitive.

Plaintiffs' other contentions have been considered, but do not require comment. The complaint will be dismissed.